**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISLAM BEKHOEV,<br><br>                    Petitioner,<br><br>          v.<br><br>DAVID MARIN, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-00612-MBK<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS |

Petitioner Islam Bekhoev, a citizen of Russia, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. On February 11, 2026, Petitioner Bekhoev filed the instant habeas Petition and an application for a temporary restraining order ("TRO"). He alleged several federal constitutional and statutory violations in connection with the revocation of his humanitarian parole and detention. The Court granted the TRO in part and ordered Respondents to provide Petitioner with written notice detailing the reasons for the termination of his parole. Despite the TRO and the repeated requests of Respondents' counsel to Immigration and Customs Enforcement ("ICE") for the written notice, ICE has yet to provide

the court-ordered notice to Petitioner. Because Respondents have failed to comply with the TRO or otherwise justify their decision to terminate Petitioner's parole and detain him, the Court concludes that Petitioner's immediate release is now warranted.

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner Bekhoev entered the United States on July 21, 2023, and was subsequently granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) until April 18, 2025. Dkt. 2 at 26.

On March 4, 2025, Petitioner was arrested during a scheduled ICE check-in and has remained in DHS custody since that time. Petitioner was scheduled for a bond hearing before an Immigration Judge on September 11, 2025, but the hearing was cancelled at his request. Dkt. 7-1.

On February 11, 2026, Petitioner Bekhoev filed the instant habeas Petition and an application for a temporary restraining order ("TRO"). He asserts seven causes of action claiming violations of his Fifth Amendment substantive and procedural due process rights, the Administrative Procedure Act ("APA"), and DHS regulations. He also seeks an order requiring his immediate release. Respondents opposed the TRO application, arguing that Petitioner failed to exhaust his administrative remedies by withdrawing his request for a bond hearing. Dkt. 7. The District Court ordered supplemental briefing addressing exhaustion and the merits of the Petition. Dkt. 9

On March 12, 2026, the District Court granted the TRO application in part. The Court found that Petitioner had shown he is likely to succeed on his APA claim that Respondents violated the parole regulations requiring pre-termination notice. *See* Dkt. 16 at 6 (citing 8 C.F.R. § 212.5(e)(2)(i) (stating that parole may be terminated "upon written notice" when the purpose of

parole is accomplished, or when "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States")). However, the Court concluded that Petitioner failed to demonstrate that release is the appropriate remedy for any APA violation. *Id.* The Court ordered Respondents "to provide Petitioner with written notice detailing the reasons for the termination of his parole, in accordance with 8 C.F.R. § 212.5(e)(2)." *Id.* at 7. The order also set a briefing schedule for the underlying habeas Petition. *Id.*

On March 20, 2026, Respondents filed an answer in which they contended that (1) the Petition failed to plead a factual basis for any specific relief; (2) Petitioner did not demonstrate that DHS lacked authority to detain him or that the appropriate remedy is immediate release from custody; (3) Petitioner was not deprived of due process under the Fifth Amendment; (4) Petitioner did not exhaust his administrative remedies; and (5) APA violations are not grounds to grant the Petition. Dkt. 17 at 3-9. Respondents also noted the remedy provided by the TRO, stating "when this written notice becomes available, Respondents will submit it to the Court." *Id.* at 6 n.2.

On March 27, 2026, Petitioner Bekhoev filed a reply contending that Respondents' answer "offer[s] nothing new" and that Respondents' continued noncompliance with the TRO demonstrates that the narrowly tailored remedy of providing pre-deprivation notice failed. Dkt. 22 at 2-4. Petitioner argues that the Court should grant stronger relief, namely, immediate release from custody. *Id.* at 5-6.

On April 3, 2026, Respondents filed a sur-reply (as permitted by the briefing schedule in the TRO) and addressed the non-compliance issue. According to Respondents, "ICE was notified of the order and its requirements soon after it was entered. On March 20, 2026, when the answer was filed, the

written notice had not been issued by ICE. Since that time, the undersigned has requested the written notice on several occasions from ICE, including as recently as today. However, no written notice has been provided by ICE to Petitioner." Dkt. 23 at 2 (internal citation omitted).

The parties subsequently filed a joint consent to Magistrate Judge jurisdiction. Dkt. 25.

## II.   DISCUSSION

As a threshold matter, Respondents argue that this Court lacks jurisdiction to consider Petitioner's claims because he failed to exhaust administrative remedies and that his APA claim is unreviewable because there no "final agency action" at issue. Dkt. 17 at 7-8. Respondents acknowledge that the District Judge previously rejected these arguments in his reasoned decision granting a TRO in part, (Dkt. 16 at 3-6), but "reiterate" the arguments merely to "preserve" them. Dkt. 17 at 7 n.3; *id.* at 9 n.5. Respondents therefore provide no reason to depart from the District Judge's decision—that is, that the decision was clearly erroneous, or that any additional facts or intervening authority warrant reconsideration. *See Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012) (en banc) (under law of the case doctrine, "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case," unless "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial") (internal citation omitted); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (recognizing that while generally

4

"decisions at the preliminary injunction phase do not constitute the law of the case," there is an exception for "conclusions on pure issues of law"). For the reasons that the District Judge previously explained, the Court finds that exhaustion is not required because there "is no administrative process capable of resolving" Petitioner's claims concerning his parole revocation, (Dkt. 16 at 4), and that the termination of his parole constitutes final action subject to judicial review under the APA (*id*. at 5-6).

Turning to the merits of Petitioner's claims, Respondents do not dispute the District Judge's finding that they violated the APA by terminating Petitioner's parole without providing the notice required by 8 C.F.R. § 212.5(e)(2). Rather, Respondents contend that "[w]hatever procedural deficiencies may have hypothetically occurred, they do not warrant Petitioner's release and indeed could be cured by means well short of release." Dkt. 17 at 5. They assert that the appropriate "narrowly tailored" remedy is "to provide Petitioner with written notice detailing the reasons for the termination of his parole, in accordance with 8 C.F.R. § 212.5(e)(2)," as the District Judge previously ordered. *Id*. at 6. They assert that "[t]here is no reason to veer from this approach" at final disposition. *Id*.

However, Respondents have failed to provide the required notice in the roughly four weeks since entry of the TRO. Respondents provide no justification for their failure to comply with the TRO and do not indicate when, if ever, they intend to provide Petitioner with notice of the basis for the termination of his parole. In Respondents' sur-reply, they admit that "ICE was notified of the order and its requirements soon after it was entered" and that Respondents' counsel "has requested the written notice on several occasions from ICE, including as recently as" April 3, 2026, but "no written notice has been provided by ICE to Petitioner." Dkt. 23 at 2.

Under these circumstances, the Court agrees with Petitioner that "lesser relief has proven ineffective" and that it is appropriate to order Petitioner's release due to Respondents' failure to show that it lawfully terminated Petitioner's parole. Dkt. 22 at 2. This is an appropriate remedy given the nature and purpose of the notice required by the regulations. Prior to his re-detention, Petitioner had been released on parole since 2023, which reflects the Government's determination that his release was warranted for "urgent humanitarian reasons" or "significant public benefit" and that he does not present a "security risk" or "risk of absconding." 8 C.F.R. § 212.5(b). The regulations only permit the Government from terminating his parole where it determines that the "the purpose for which parole was authorized" has been accomplished or "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States" and provides notice to the noncitizen of that determination. 8 C.F.R. § 212.5(e)(2)(i). The notice must be individualized and "must include a cogent description of the reasons supporting the revocation decision." *Khosa v. Noem*, No. 1:26-cv-00532-JLT-CDB, 2026 WL 555503, at *5 (E.D. Cal. Feb. 27, 2026), *adopted*, 2026 WL 670321 (E.D. Cal. Mar. 10, 2026).

The notice required by 8 C.F.R. § 212.5(e)(2) is not an empty formality. It provides the basis for the Government's determination that parole should be terminated—and the noncitizen should be detained—and affords the noncitizen notice and an opportunity to respond to the Government's asserted basis for termination. The notice therefore ensures that the Government has lawful authority to detain a noncitizen previously released on parole. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1143 (D. Or. 2025) (observing that the Government Respondents conceded that if "they unlawfully terminated Petitioner's parole" without proper notice, "then Respondents do not have a

lawful basis for Petitioner's detention"). It also ensures that the Government does not engage in arbitrary and capricious decisions, in violation of the APA, by providing a "reasoned explanation for [their] action." *Id*. (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Here, despite ample opportunity, Respondents have failed to provide notice of their reasons for terminating Petitioner's parole and why his detention is justified on that basis. Given that the "narrowly tailored relief" of the TRO has failed to remedy this violation, and Respondents propose no other relief short of release that is appropriate under these circumstances, the Court finds that Petitioner's release is warranted.

### III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to appropriate conditions of supervision, and preventing his re-detention absent compliance with the parole regulations; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Dated: April 8, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

7